Plaintiff, a colored laborer, sued his employer, Southern Natural Gas Company, and its insurer, American Mutual Liability Insurance Company, to recover workman's compensation for a period of four hundred (400) weeks, less payments made to him, on the theory that on June 11, 1940, he was accidentally injured while performing the duties of his employment which resulted in disability, permanent and total, to do work of any reasonable character. He was paid compensation on the basis of total disability from the date of the accident until January 1, 1942. This suit was filed March 31, 1942.
Plaintiff specifically alleges that a piece of metal piping twelve feet (12') long fell a distance of ten feet (10') and struck him on the top of his head, knocking him to the ground, from which blow he was rendered unconscious for a few moments; that the lick seriously and permanently injured his brain, nerves, spinal cord and column, upper and middle portions of the spine; also, the nerves and muscles of his right arm, in addition to fracturing the base of his skull and the vertebrae of his neck.
Defendants admit that plaintiff was accidentally injured at the time and place alleged upon but deny that such injuries were serious or permanent. They aver that he has fully recovered therefrom and is now well able to perform manual labor. The issues, by the pleadings, therefore, have been narrowed to whether or not plaintiff now suffers any disability from the effects of the accident and if so, the extent and probable duration thereof.
The case was tried before Judge J.T. Shell, who retired from the bench before rendering judgment. By agreement, the case was submitted to Judge D.I. Garrett on the testimony and evidence previously adduced. He adjudged plaintiff to be disabled to the extent of fifteen per cent (15%) and awarded him judgment for Three Dollars ($3.00) per week for a period not to exceed three hundred (300) weeks, giving credit for the time for which compensation had been paid. Plaintiff appealed and here contends that he should have had judgment for the full amount and for the period for which prayed. Defendants have not answered the appeal and for this reason the judgment may not be disturbed in their favor.
Plaintiff, when injured, was thirty-five (35) years old. He was engaged in cleaning out a hole in the ground preliminary to pouring concrete therein. The cleaning was done by using a posthole digger to which was attached thirty-two feet (32') of three-fourths inch (3/4") water pipe. He decided to withdraw the piping from the hole and, presumably, disconnect it from the digger. This was done by means of a line and block. Two other colored men assisted him. They unscrewed the first section of the piping, being eleven and one-half feet (11 1/2') long, and negligently allowed it to fall at length. Its farther end struck plaintiff on top of his head. He testified that the lick knocked him to the ground and that he was unconscious therefrom for some fifteen minutes. His version of the accident is not disputed. No other witnesses having knowledge thereof testified. It is probable that due to the two years intervening between the accident and the date of trial, other witnesses could not be located.
According to plaintiff's testimony the time keeper carried or had him carried by truck to Bastrop for first aid treatment, where he remained for a few hours. He was then carried to the City of Monroe, some twenty-six (26) miles distant, and placed in a sanitarium for appropriate treatment. He was a patient there for *Page 350 
twenty-two (22) days. Dr. J.W. Cummings prescribed for and treated him, but we are without the benefit of Dr. Cummings' testimony as at the time of trial he was somewhere in the armed forces of the Government. However, it is quite clear that Dr. Cummings was of the opinion that plaintiff's neck had been seriously injured from the accident as weights were attached to it in the effort to restore its physical status to normalcy. These weights remained attached for the time plaintiff was in the sanitarium. When removed, at the time of his discharge from the sanitarium, Dr. Cummings affixed a steel neck brace which was worn until the following December 12th. It was removed by Dr. C.H. Mosley and a cast, resting upon the hips, applied. The record does not disclose date of removal of this cast. Plaintiff admits that Dr. Cummings advised him to remove the neck brace long prior to December 12th, but he declined to comply with the advice.
Plaintiff was X-rayed twice while in the sanitarium — once by Dr. W.L. Smith and once by Dr. D.M. Moore. Beginning December 12th, after the accident, several X-rays of his head and spinal column were made by Dr. Mosley. On May 29, 1942, he was physically examined by Dr. T.M. Oxford, orthopedic surgeon, in the City of Shreveport, and additional X-ray pictures were then made. Dr. Moore also made pictures of him in April, 1942.
As so often happens, in fact, almost invariably, there is wide difference between the doctors as to what these pictures actually reflect. The pictures made by Dr. Oxford, however, were not interpreted by any other physician.
Dr. Mosley is quite certain the pictures made by him revealed a fracture of the frontal portion of the skull, of one jaw bone, the third and fifth cervical vertebrae and the fifth thoracic vertebra. He does not accredit the fracture of the jaw bone to the accident, but was unable to account for its existence. He is equally positive in the opinion that plaintiff because of these fractures, has the pains of which he complains and is totally disabled to do manual labor. Not one of the other doctors found any injury to plaintiff's skull, jaw bone nor thoracic vertebra.
Dr. I.J. Wolff, who interpreted the pictures made by Dr. Moore, found a compressed fracture of the fifth and possibly a fracture of the third cervical vertebrae. He is of the opinion, based upon this interpretation and his own physical examination of plaintiff, that he has pains and is disabled to work.
Dr. Mosley, in describing plaintiff, added that he thought him crazy. Dr. Wolff found him to be quite fidgety. A former landlord of plaintiff's testified that prior to being hurt, plaintiff possessed a "quiet, even, smooth disposition", but since that event "he was irritable and cross and at times when I would collect rent from him was worried and more or less excited." This witness was not interrogated concerning plaintiff's physical condition otherwise.
Plaintiff testified that he "hurts all the time" in the back, neck, head and "skull"; that the middle of the back hurts everytime he makes a step; that his head hurts "when I gets in a rage — it is just a roaring in my head," which, he says, persists for two or three days; that both arms ache at times and have lost so much strength that he is unable to lift anything; that when he "lays" on his neck for two or three hours it becomes stiff. He is sure he cannot work. He did not offer the testimony of any neighbor or member of his family to corroborate any portion of his testimony, although he is married.
Plaintiff's own testimony clearly disproves the imputation that he is crazy. On the whole his answers to questions were unusually clear and intelligent for an illiterate colored laboring man. It may be that he is now more irritable than prior to being hurt but this should not necessarily affect his ability to labor. By getting excited and worried when called upon to pay his rent is not specially significant. Many persons, well balanced mentally, are likewise affected when the rent collector comes around.
Drs. Moore, C.P. Gray, D.I. Hirsch and Oxford testified for defendants. Each was positive in the opinion that plaintiff was greatly exaggerating his condition. They could find no clinical reason for the numerous pains he claimed to have and unqualifiedly pronounced him a malingerer. Dr. Oxford gave the following testimony concerning plaintiff's condition at time of trial, to-wit:
"From the clinical examination and X-ray examination at this time it is my opinion that this patient was grossly exaggerating his complaint of continued pain and disability. It is my opinion that as *Page 351 
soon as this patient has obtained settlement he will resume his work and be able to do manual labor; however, in fairness to him, because he may occasionally have some discomfort in his neck I would be inclined to rate him as having permanent residual disability of ten to fifteen per cent."
The lower court evidently largely based judgment upon this quoted testimony.
No good purpose would be served by analyses of the testimony of the doctors who do not agree with plaintiff's contentions. Their testimony is sufficient in probative weight to overcome that offered in plaintiff's behalf; at least, to create in the mind of this court serious doubt of the truth of plaintiff's profession of pains and disability. We think the record does not establish disability beyond that which the court found to exist and this is not shown to be of a permanent character.
The medical testimony as a whole satisfies us that plaintiff sustained injury to one or more vertebrae of the neck. If this were not true, the treatment administered at the sanitarium, and wearing the neck brace after discharge therefrom, were vain and useless. Ordinarily we would not expect the lick from the falling pipe, a distance of not more than six feet, as plaintiff was erect when it occurred, to produce the results which, to some extent, admittedly were produced; but, we are of the opinion the injuries inflicted have healed sufficiently to allow plaintiff to resume work. Such injuries were not of an incurable character and have been treated by competent physicians.
Plaintiff's counsel advances the argument that because defendants did not procure the testimony of the physician at Bastrop who first treated plaintiff, and that of Dr. Cummings, it should be assumed that their testimony would have been unfavorable to defendants. We think this position is not well founded in view of the fact that plaintiff's condition from the day of injury until the time of trial is fairly well established by the testimony of other doctors.
The judgment awarded plaintiff compensation at the rate of Three Dollars ($3) per week for not more than three hundred (300) weeks, to begin as of the date of the accident, but gave credit for the payments made to January 1, 1942, some eighty-one (81) weeks at Ten and 92/100 Dollars ($10.92) per week. As plaintiff was evidently totally disabled to January 1, 1942, the payments made to that time on that basis were due him. Partial disability ensued thereafter. Therefore, the decree should be recast to conform to these facts.
For the reasons herein assigned, the judgment appealed from as regards the compensation award is hereby recast and amended to read as follows:
It is ordered, adjudged and decreed that plaintiff be and he is hereby awarded judgment for compensation during the period of disability, not exceeding, however, three hundred (300) weeks, from June 11, 1940, as follows:
To January 1, 1942, at the rate of Ten and 92/100 Dollars ($10.92) per week, and thereafter at the rate of Three Dollars ($3) per week; and as thus recast and amended, said judgment is affirmed with costs.